IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRUCE RASSOLI, *et al.*, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-11-2827 |
| § | |
| INTUIT INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Bruce Rassoli, Transgear Incorporated, Transgear Incorporated d/b/a Discount Car Care, and Unicare MRI & Diagnostic Center, LLC, filed this lawsuit in Texas state court in June 2011. (Docket Entry No. 1, Ex. C). The defendant, Intuit Inc., timely removed on the basis of federal diversity jurisdiction. (Docket Entry No. 1). Citing a forum-selection clause in the parties' contract that requires disputes to be resolved in California, Intuit has moved to dismiss for improper venue or to transfer to the United States District Court for the Northern District of California. (Docket Entry No. 4). The plaintiffs oppose transfer. (Docket Entry No. 10). This court held a hearing on the motion at which counsel presented oral argument, and the parties filed supplemental briefing, (Docket Entry Nos. 14, 16).

Based on the motion, response, and supplemental briefing; the arguments of counsel; the record; and the applicable law, this court grants Intuit's motion to dismiss. The reasons are explained below.

**I.   Background**

Rassoli lives and works in Houston. He has an interest in two businesses, Discount Car Care and Unicare MRI & Diagnostic Center, both Texas companies operating in Houston. (Docket Entry No. 1, Ex. C, ¶¶ 3–5).

Intuit is a Delaware corporation headquartered in Mountain View (Santa Clara County), California. (Docket Entry No. 4, Hamby Decl., ¶ 2). Intuit owns QuickBooks, a popular accounting-software program used by small and mid-sized businesses. (*Id.*, ¶ 4). Shane Hamby, Senior Product Manager for QuickBooks, explained how a potential user purchases and installs QuickBooks. "Before a user can install QuickBooks Pro 2010 on his computer, he is shown and provided an opportunity to review the operative Intuit Software End User License Agreement (the 'Agreement')." (*Id.*, ¶ 6). As is customary for software user agreements, the Agreement contains terms and conditions of use. The Agreement states that it is "governed by California law, without regard to its conflicts of law principles, and applicable federal law." (Docket Entry No. 4, Ex. D, ¶ 18). The Agreement states that it "is the complete agreement between you and Intuit and sets forth the entire liability of Intuit, its affiliates and its Suppliers and your exclusive remedy with respect to the Software and its use." (*Id.*). It contains a forum-selection clause: "The parties hereby consent to the exclusive jurisdiction and venue in the state courts in Santa Clara County, California or federal court for the Northern District of California." (*Id.*). Before a potential user of QuickBooks can install the software, "he is required to check a box on his computer screen that indicates 'I accept the terms of the license agreement.'" (Docket Entry No. 4, Hamby Decl., ¶ 6). Until the user checks the box, he may not click on the "Next" button to continue with the installation. (*Id.*; Docket Entry No. 4, Ex. B). "If the user chooses not to agree, he can return the product for a full refund." (Docket Entry No. 4, Hamby Decl., ¶ 6). After the user checks the box, he can click on the "Next"

button to continue with the installation. (*Id.*; Docket Entry No. 4, Ex. C). All potential users of QuickBooks Pro 2010, whether new customers or customers upgrading from a prior QuickBooks version, must go through this process to install the software. "This is true whether the product was purchased for download or in CD format." (Docket Entry No. 4, Hamby Decl., ¶ 8).

Rassoli used QuickBooks Pro. In early 2010, Intuit contacted Rassoli "to inform him that his version of Quickbooks . . . would not longer be supported and if he wished to preserve his data he would have to download the latest Quickbooks edition." (Docket Entry No. 1, Ex. C, ¶ 7). Rassoli purchased and downloaded QuickBooks Pro 2010 in May 2010. (Docket Entry No. 4, Hamby Decl., ¶ 4; Docket Entry No. 4, Ex. A). Rassoli had to complete the installation process described above, including accepting the license agreement, to purchase and install QuickBooks. (*See* Docket Entry No. 4, Hamby Decl., ¶ 8). Rassoli does not dispute that he completed the process and accepted the license agreement.

Rassoli had problems installing QuickBooks onto his computer, so he called Intuit's customer service. With Rassoli's consent, an Intuit employee remotely accessed Rassoli's computer to help with the installation. (Docket Entry No. 1, Ex. C, ¶ 8). According to Rassoli, "[d]uring the remote access, Defendant's employee negligently erased several years worth of payroll information. Defendant's repeated attempts to restore this data were unsuccessful." (*Id.*, ¶ 9). Based on this incident, the plaintiffs sued Intuit, alleging negligence, breach of contract, breach of fiduciary duty, misrepresentation, and common-law fraud by negligent misrepresentation. Intuit removed on the basis of federal diversity jurisdiction. Intuit now moves to dismiss or transfer this suit based on improper venue under the forum-selection clause.

**II.     The Applicable Law**

Under 28 U.S.C. § 1406(a), a district courts must either dismiss a case "laying venue in the wrong division or district" or, "in the interest of justice," transfer to a proper venue. A motion to dismiss on the basis of a forum-selection clause is properly considered under Federal Rule of Civil Procedure 12(b)(3). *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005). "Once a defendant raises the issue of improper venue under FED. R. CIV. P. 12(b)(3), the plaintiffs have the burden to prove that the chosen venue is proper." *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011) (citing *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002)); *accord, e.g.*, *Uviado, LLC ex rel. Khan v. United States ex rel. IRS*, 755 F. Supp. 2d 767, 779 & n.7 (S.D. Tex. 2010). Factual allegations must be viewed in the light most favorable to the nonmovant. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009). In resolving a Rule 12(b)(3) motion, "the court is permitted to look at evidence beyond simply those facts alleged in the complaint and its proper attachments." *Id.* at 238 (internal quotation marks omitted).

## III.   Analysis

The plaintiffs concede that federal law governs the enforceability of a forum-selection clause in federal diversity lawsuits. (Docket Entry No. 16, at 1); *see also, e.g.*, *Alliance Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008). They nonetheless argue that state substantive law applies. (*See* Docket Entry No. 16, at 2). State law does apply to decide whether a valid contract exists. One of the cases the plaintiffs cite, *RealPage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539 (E.D. Tex. 2007), presented the question of whether a valid contract existed and looked to state law to answer that question. *See id.* at 545–48. But that is not the disputed question here. Both California law, which governs the Agreement, as well as Texas law, recognize

4

"clickwrap agreements."  *See, e.g.*, *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009); *RealPage*, 560 F. Supp. 2d at 545.  The plaintiffs recognize that under applicable state law, the Agreement was a valid contract between the parties.  (*See generally* Docket Entry Nos. 10, 16).  The issue is whether the forum-selection clause in the Agreement is enforceable.  That issue turns on federal law.  *See Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) ("We begin with federal law, not state law, to determine the enforceability of a forum-selection clause.").

"Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a heavy burden of proof." *Id.* (internal quotation marks omitted).  "The presumption of enforceability may be overcome, however, by a clear showing that the clause is '"unreasonable" under the circumstances.'" *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).  The Fifth Circuit recognizes four conditions under which a clause may be found unreasonable:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Lighthouse MGA, L.L.C. v. First Premium Ins. Grp., Inc.*, 448 F. App'x 512, 514 (5th Cir. 2011) (per curiam) (internal quotation marks omitted) (quoting *Haynsworth*, 121 F.3d at 963).

In this case, the plaintiffs have not attempted to show that the forum-selection clause is "unreasonable." They have not met their "heavy burden." *See Fin. Cas. & Surety, Inc. v. Mascola*, Civ. A. No. H-11-0120, 2011 WL 3020934, at *2 (S.D. Tex. July 22, 2011) ("Defendants have

produced no evidence that the forum selection clause was the result of fraud or overreaching, that it violates a strong public policy of this forum, or that it would deprive them of their day in court."). Even had the plaintiffs attempted to make such an argument, it would be unavailing on the current record. There is no evidence of fraud or overreaching. "[T]he court's focus" in this inquiry "is whether inclusion of the forum selection clause was fraudulent or coerced." *Noble Drilling, Inc. v. M/V OSC VLISTDIEP*, Civ. A. No. 10-2865, 2011 WL 1399243, at *8 (E.D. La. Apr. 12, 2011) (citing *Haynsworth*, 121 F.3d at 963). There is no fraud or coercion merely because a forum-selection clause is in a contract of adhesion. *Id.* at *8–9. The record shows that Rassoli could have declined to agree to the license agreement terms and received his money back, further reducing the adhesive nature of the contract. Second, the plaintiffs have presented no evidence that litigating in California would be gravely inconvenient or unfair. Third, they may seek the same remedies in California as in Texas. Fourth, there is no evidence that enforcing the forum-selection clause would contravene California public policy. To the contrary, under California law, "forum selection clauses are valid and should be given effect unless enforcement of the clause would be unreasonable." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1287 (9th Cir. 2006) (en banc) (quoting *Intershop Commc'ns, AG v. Superior Court*, 127 Cal. Rptr. 2d 847, 850 (Ct. App. 2002)). California's "favorable treatment of forum selection clauses is conditioned on their free and voluntary procurement, 'with the place chosen having some logical nexus to one of the parties or the dispute, and so long as California consumers will not find their substantial legal rights significantly impaired by their enforcement.'" *Id.* at 1288 (quoting *Am. Online, Inc. v. Superior Court*, 108 Cal. Rptr. 2d 699, 707 (Ct. App. 2001)). Intuit is headquartered in Santa Clara County. The plaintiffs will be able

to assert the same causes of action in California as in Texas. The forum-selection clause is enforceable.

The remaining issue is whether to dismiss or to transfer. The forum-selection clause allows a party to sue in either California state or federal court. Transferring to the Northern District of California would deprive the plaintiffs of their contractual right to choose between state or federal court. Although a state-court suit presumably would be removable, there is no guarantee that Intuit would remove the case. Dismissal, not transfer, is appropriate.

**IV.     Conclusion**

Intuit's motion to dismiss, (Docket Entry No. 4), is granted. This case is dismissed, without prejudice, for improper venue under 28 U.S.C. § 1406(a).

SIGNED on March 19, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge